Good morning, your honors. Good morning. It's still morning. I'd like to reserve three minutes for rebuttal with the court's permission. Sure. As I sit down to look at this, I realize that there's a lot of issues and they're kind of far-flung. They go from judicial estoppel to evidence. I'm going to try to focus my argument today on sort of what the core disputes. At least that's my plan, subject to an audible if the court has a desire to talk about something else. Go ahead and do whatever you want to do. So my plan is to talk about our receivables versus accounts argument and then the question of whether the predecessor in interest waived the contractual right to interest. But I recognize that in doing that, I've kind of framed the issue in a way that may inaccurately describe what's important in this case. Because PRA, well, in framing the question that way, it makes it this case about whether this credit card agreement gives PRA some rights. But Portfolio Recovery Associates told the trial court that this contract wasn't even the basis for its state court collection action. This happens after remand, when they... I mean, the first time up was a 12B6 before... No, I'm talking after remand, Your Honor. I'm skipping past that question. All right. Okay. They get the documents, not pursuant to the contract because it's after the time limit, but they are able to get the documents from the predecessor in interest and they see an They move for leave to amend their answer so they can assert an affirmative defense of arbitration. Ms. Stratton says, wait, hold on. You sued us in state court and we've been to the Sixth Circuit and back. There's no arbitration issue here, though. So in the reply brief on this question as to being able to amend the complaint, they brought the collection lawsuit not under the contract, but as an account stated. They disclaim that it is a contract claim based on the contract. That's pages 325 and 326 of page ID numbers. Court eventually grants the motion for leave to amend the complaint. Arbitration doesn't end up getting... There's not a motion to compel arbitration, obviously, because we're talking this morning about whether PRA had a right to pursue contractual interest from Ms. Stratton under a contract that it didn't sue over. Are we talking about contractual interest or statutory interest? Well, based on Stratton 1, they have to win that they have a right to recover contractual interest before they could recover the statutory interest. What about Utah? Oh, yes. I mean, there is a theory. Can they get to Utah and get Utah's pre-judgment interest? Isn't that the issue before us? I think there's a lot of issues in this case, Your Honor. I understand what you're saying. One of the arguments that PRA is making is that this contract, the credit card agreement, has a choice of law provision. If that choice of law provision applies, then they get to access Utah law and Utah's statutory pre-judgment statute is different from Kentucky's, so they would access their 10% rather than our 8%. That is one of the arguments they're making. I would be happy to talk about why they don't get those contract rights. What I'm saying is they didn't even sue under that contract in the first place. So the question of whether they could recover interest in that underlying state court lawsuit, you don't get to Utah unless you start with the contract. And they represented to the trial court that it wasn't a suit on the contract, that it was an account stated, which is common law. What was that reply brief in reply to, or what was the motion? They moved to amend their complaint to assert the arbitration defense. Did the court grant or deny? Grant, eventually. What's the difference between an account stated and suing for breach of contract? It's a different contract entirely. The account stated is a common law claim, the premise of which is that the meeting of minds that occurred isn't the original credit card agreement, but rather the fact that they sent an invoice for a past due amount, and by acquiescing essentially into that, you've created a meeting of the minds that they owe that amount. Did the amended complaint state a claim for breach of contract? There was only one complaint in state court. You said they moved to amend their complaint. I'm sorry, they moved to amend their answer. We've got the state court action, and it's in the state court action where they're saying we weren't bringing a suit under this credit card agreement. The issue in the fair debt collection practice of that case we brought is whether you can recover this interest. You're claiming 8% interest from the date of charge off, and when they get back to the trial court, they say, hey, we weren't even suing on that contract. Just to frame the issue, it's not real clear why it would even matter if this credit card agreement contains a choice of law provision that would get them to Utah, because that again is a radical departure from the way the argument was presented in the 12B6, but I'm focusing on the receivables only argument. Did you argue to the district court that, hey, these guys are stopped from invoking the contract because you'll remember, Judge, they said it was an account stated they were chasing us for? I don't know that the arguments were made that explicitly. We definitely made the argument that they didn't have this contract. The district court didn't feel bamboozled, apparently, by the invocation of the contract. Apparently not. So that's kind of a dog that's not barking on this one. Apparently not. At least not with the district court. Can you talk about whether Utah law applies? I totally get your argument. I'm not blowing it off, but why doesn't Utah law apply? It's got a choice of law provision. Agreed, but they don't get that contract. They did not purchase the rights under that contract. The only way that they get any right to recover anything from Miss Stratton is through the bill of sale and the fast forward receivables purchase agreement. The bill of sale, the language in both the bill of sale and the fast forward receivables purchase agreement say that they purchase receivables. The terms of the UCC says receivable includes the contract. No. We don't even get to that question. You're two steps removed. A lot of hoops in this case. Yes, very many. On a hoops day, that's probably okay. That's right. Section 109C5 excludes assignments for the purposes of collection only from the entire article and 404C exempts consumer credit obligations. Even if that were true, 404A doesn't say that if you purchase the receivables, the assignee gets all the contract rights. What it says is you're subject to the contract defenses. It's a unilateral provision. You can't split off the receivables and then say, sorry, you were defrauded, but you can't raise those contract defenses because we only have the receivables. The obligor has the ability to raise contract defenses. 404A does not mean that the purchaser accedes to all of the contract rights. I guess that answers the UCC level of it. The first level of it is whether they purchased it in the first place. Do you have a case that says that? They're cited in the brief, yes. On these facts? No. It says what 404A means. It's the assertion of defenses. Subject to means subject to. If it were intended to say that all the rights came with it, that would have been much easier to say than subject to. In the subject to cases we cite in the brief say that it doesn't mean that you can bring any claim under that contract, but it means you are subject to the defenses that could be asserted. I thought that the handful of courts that have reached the question whether the choice of law clause, whether an assignee can benefit from a choice of law clause, I thought the courts that have reached that have all said that the assignee can benefit. I don't know that any of those courts, I did not see any case that examined 404A in that context and based that in 404A. All the cases that are being cited in this case are mostly Eastern District of Kentucky cases. Is this a contract for goods? Consumer credit transaction. It was a Lowe's branded credit card. Do you have a position on what the result is if Utah law applies? We're in a world of hurt if Utah law applies. I think the argument that I started with... I didn't hear what you said. It may be that I'm speaking too colloquially. I said we are in a world of hurt if Utah law applies. So you concede, you're conceding that Utah law... Our position becomes exceedingly difficult to win in a world where Utah law applies. Because you believe their statute is materially different from the Kentucky statute? Our brief does not articulate a path to victory under Utah law. I will go so far as to say that. With respect to the question of waiver, it's probably only me who's intrigued by this question of law versus question of fact. We're really both arguing for de novo review, just sort of getting there in different ways. But I'm not really sure that it even matters in light of the Carroll-Harrell case that I cited as additional authority. That's the Kentucky Supreme Court case decided last month. Sort of ratifies this court's previous decision in Stratton 1. It's 5-1 on that issue. But it is 6-0 on the question of waiver on identical facts. It says charging off the debt waives the right to contractual interest. And even the dissenter reaches that conclusion. So in a world where Kentucky law applies, we think we're pretty solid on that ground. And probably entitled to judgment as a matter of law on the facts. As we pled them, reaching a question of waiver becomes pretty easy. Your argument on why Kentucky law doesn't apply... Utah. I'm sorry, Utah doesn't apply. First, because the complaint says they're relying on an account stated. And second, because when you transfer the receivable, you're not transferring the contract right. Three arguments that we make as to why you don't get to Utah. One is the judicial estoppel argument. That they argued the choice of law argument overtly and directly during the previous appeal and should be bound by that. Number two is they bought the receivables. They didn't buy the contract. Therefore, they don't access the choice of law clause. Three is the evidence issue. Essentially that they don't have admissible... They don't have a contract in a form that would be admissible that contains a choice of law clause. They can't prove it. I mean, let's say they had the wrong custodian. But there's no question that they can easily get the right custodian. I mean, it's not... You didn't have a trial. I mean, the judge can only consider admissible evidence. So, I mean, there's no question that if you conclude that it couldn't be a business record of your client... I'm sorry, of their client because it wasn't incorporated, they could certainly call the GE custodian. They make that argument and we respond in a footnote saying that's real helpful, but we have no idea what that GE custodian would say. They have to produce their evidence and show how it would be in an admissible form. There's nothing in this record that would show that that evidence would be in an admissible form because they can't show an 8036A finding. I think you got your money's worth for the opening round there. You'll get your rebuttal. We'll hear from Mr. Tucker. May it please the court. I want to start out with the account stated issue. When PRA purchases an account from GE, it obtains all of its contract rights, all of the rights to collect on the debt. When it files a claim in state court to collect on account, PRA then has to make a choice. What causes of action among its basket of rights will it assert? In the state court case, it asserted a right to an account stated. It didn't assert a breach of contract case. It asserted a right to an account stated. It asserted an entitlement to 8% interest based on that liquidated debt. Now, in defense of the FDCPA claim, PRA is entitled to rely on that contract as a defense to the allegation that it sought interest that it was not entitled to seek. Just because PRA does not assert in the collection case a right that it has does not mean that it forever waives that right to assert an entitlement under the contract in defense of the FDCPA claim. And I think that's a really, really important fact here. Okay, I mean that's a very lucid explanation. Why don't you tell us why you think the term receivable includes the choice of law provision? Your Honor, if PRA obtains the contract rights, and we believe that PRA did, then frankly, PRA must win this case. So, I gather there's an asset purchase agreement or something here. The Forward Flow Receivables Purchase Agreement, which is in the record, is the 30-page document by which GE Bank, and we keep calling it GE Bank, I think at some point it changed its name to Synchrony Bank, but GE Bank sold the portfolio of accounts to PRA. Among that document is a reference to receivables. They're selling receivables. That is a defined term in the Forward Flow Agreement. Okay, what's the definition? The definition of receivable means any quote, I'm quoting this completely, receivable means any retail credit card receivable relating to an unsecured credit card account owned by a seller, that's GE, that is being sold to buyer. So it's kind of a circular definition. It's a little bit of a circular definition. I will totally agree with that, Your Honor. But what they're referring to, Judge, is they're referring to the accounts. They're using it as a defined term. They're not using it as a bookkeeping term. We are only assigning you this one sliver of all of our rights. GE, if you read the contract as a whole, GE is assigning and selling to PRA all of GE's rights. And that's very important. It doesn't say that. It says receivable. It does say receivable as a defined term. But for you to conclude that receivable means something less than the account as set forth here, then you also have to assume, you have to read somewhere in the contract that GE split the receivables from the contract rights. And there's nothing in that forward flow receivables purchase agreement that says that. Interest out. No, not the interest. You have your contract rights, which was subsumed within the entire account. Then you have your right to payment. In a business, the business refers to receivables as rights to payments. Here, they're talking about the receivable is used, of course in hindsight, wouldn't we all love to redraft this, but the receivable is used to denote those accounts that are charged off on which there are past due amounts being owed. To determine that it was only a receivable, you'd have to determine that GE split up the rights to the contract and split up the rights to payments. Nowhere in this contract does it say that. You would have to determine that GE retained some rights in the account. Nowhere in that forward flow receivables purchase agreement does it say that. This sort of splitting up does routinely happen. It absolutely does. More on the liability side, right? That is correct, Your Honor. We don't know this business. That is correct, Your Honor. For us to assume that, oh, it had to include the rights, not just an account stated, that's kind of treacherous for us, just to assume that, oh, it must be like that when we don't know what we're talking about. Well, Your Honor, let me posit a couple of additional points, Your Honor. If you look through the agreement as a whole, the only way to reconcile that all of the account rights were sold is to assume that receivable, as used in that defined term, includes accounts because there are other provisions of that agreement where GE says that they will buy back any accounts that were inappropriately sold, for example. If an account is in bankruptcy, if a consumer is in bankruptcy, that account was improvidently put in the portfolio of accounts sold from GE to PRA. The contract says, the forward flow receivables purchase agreement says, that GE will buy back any accounts. They can't buy back an account unless it was sold to begin with. But I thought, you know, isn't account, in that sense, a synonym for right to payment to a certain amount of money? It could be, yes, Your Honor. Is there any law that can help us here as opposed to sort of intuiting business practices? Well, Your Honor, I guess I would start with one other issue, and that would be the burden of proof. Nobody took a deposition of a GE witness here. But we do have, to the extent that there is any concern about ambiguity here, we do have an affidavit from the PRA witness, and the PRA witness very clearly says that PRA purchased an account. They purchased all of the rights, including the contract right. That's the only evidence, the only testimony. Did the affidavit say we purchased an account? Yes, ma'am. Or did the person say we purchased all the rights, including the contract? I believe both, the account and the rights, including the contract. Because they obtained the, I believe so, Your Honor, they obtained the contract from GE in connection with this lawsuit. The other issue... No, they did that in response to requests for discovery. Yes, ma'am, that is absolutely correct. So they're hardly relying on the contract. They brought the action, they... Well, Your Honor, remember, when the initial complaint, the state court collection complaint was filed, PRA didn't need the contract. They brought an action on account stated. They didn't bring an action, a collection action for breach of contract. They didn't need the contract at that time. So let me ask you this. If they're bringing... Is it correct that all we're talking about is the claim for interest from the time of the write-off to the time of the purchase? That that's all that's at issue here? I believe that was the only allegation of the amended FDCPA complaint. Okay. So they start off with a claim... I'm sorry, you start off with a state court claim that purports to be on an account stated. Yes, ma'am. Okay. So you're making a claim under Kentucky law, and you're asking for interest, you're asserting a claim, you're asserting a right to interest covering the time period from the write-off to the purchase. From the charge-off to the purchase. Okay. And it's clear that you don't have that right. Well, it is now. It was certainly not clear at the time. Okay, but didn't you lose that in the first... Well, when PRA filed its collection suit and made what by all accounts was a routine request to the trial court, the state trial court, for prejudgment interest on a liquidated sum due... Let me just... Maybe this is because I'm from Michigan, okay? You have prejudgment interest that commences at the time of filing a complaint. That's different in Michigan, Your Honor. There's a statutory difference between what happens in Michigan... Okay, so let's get to this. And that is a matter of statute. You have a right to that. Yes, sir. Yes, ma'am. Okay. Now, you might have a right to interest before that time, and that would be either a contractual right or another statute. Well, or under Kentucky common law. No, well, I'm talking about that. Okay, or under common law. We made the argument... Okay, but you... Let me finish, please, okay? So you commenced an action that asserted a right to interest before you started the case and before you even owned the paper. No, ma'am. That's not correct. Okay, I thought that your... I thought your complaint asserted interest from the time... Okay, I believe I do understand your question now. PRA requested interest at 8% from the time period that GE stopped accruing contract interest, a charge-off. Yes. So you are correct. PRA did request it from before the time they owned it. And we know from the case that's already been decided and that is clearly the law under which we're operating that you didn't have a right to that. That is correct. We are stuck with that decision in both this court and in the Kentucky... Okay, so if all this case involves is that period anyway, why isn't that the end of it? I know that you now want to say that, well, we found this contract and there's Utah law and we're entitled to it. That's fine, but that's not what you asked for. You didn't say we want... Under Utah law, we're asserting this, that or the other thing. You abandoned that contract. You sued on an account stated and you asked for interest that you weren't entitled to under that account stated. So why isn't that the end of it? Well, it would be the end of it in the state court case. But the issue in this FDCPA case is that we took action we weren't legally entitled to take. Yes. Based on the contract rights that we received, the PRA received from GE, we were legally entitled to take that action. We just did not exercise, PRA did not exercise that right. Merely because they... Other action that you weren't authorized to take. Well, we were authorized to take that action. If we sought interest less than we were entitled to seek under the contract. We had a contract right. But you sought statutory interest for a period of time. We sought 8% interest from the date of charge off. Did you cite the Kentucky statute? Not in the collection actions. No, sir. Did you cite the Utah contract? No, ma'am, we did not. Where did you get the right to your 8% interest? The right to 8% interest was based on what PRA believed to be the interest rate it was entitled to based on presumably Kentucky law, but there's no evidence of that in the record. Okay, but the point is... We know that you... Just stop for a second. We know that in the state case you asked for something you weren't entitled to. You may have been entitled to something else, right? But you weren't entitled... I think he's disputing that. What? I think the gentleman's disputing that. Okay. Well, your honor, I guess... Let me flip it just a little bit. If I owe you $2,000 and you sue me for $1,000,  well, no, I don't owe $1,000. I owe $2,000. Here, PRA had the right at the time it filed the collection action to seek up to 21% interest. It had the right to do that as a matter of law under the contract that was fully assigned to it. It chose not to exercise that right to seek 21% interest. Based on a mistake. I mean, it was just a mistake. Arguably, it was... You asked for less than you now say you were entitled to. We asked for less than we were now entitled to. Do you maintain... I hear what you're saying. Are you saying that you had the right to ask for 21% interest for the period between the write-off and your purchase? Yes, ma'am. Okay. Doesn't that directly conflict with... with the regulation and the write-off? I mean, I understand the argument that says that, okay, we've... we forewent the contractual interest for that period of time and we're stuck with that. But under Utah law, we can get statutory interest. But you're asserting something else. You're asserting that you had the right to get 21% interest from the time of the write-off to the time of purchase. And I don't see it. Well, Your Honor, at the time of charge-off, under the 12 CFR 225... or 226.5, and I can quote to the exact line if you'd like, it says there, periodic statements do not have to be sent if the original creditor deems the debt uncollectable. Okay. Just because GE charged off the account does not mean that GE could still not collect at a later date contractual interest. A later date? After charge-off. Yes. A later date retroactively? Well, it's not retroactive. They stopped charging contract interest... excuse me, they stopped posting contract interest at charge-off. But contract interest could still accrue. Okay. Well, that's sort of like... that has to do with the reg. The reg was later clarified to make a point that you can't do that. I understand that it was a different reg at the time. It's interesting that all the cases... it's true they're not litigating it, but in every case, they seem to stipulate that they weren't entitled to contract interest after that time, for that period. I believe there are other cases that would only depend upon if there was a waiver. None of the cases actually go through and determine whether or not there was a waiver. Okay, do you have any... I regard this as a tangent, but do you have any case that says that after you have chosen not to send the statement, you can then change your mind and retroactively collect? Well, it's assuming that there was an actual change of GE's mind. We don't know what GE was doing. Do you have any cases that say that after you have chosen not to send a statement accruing interest for that period, you may then go back and charge interest for that period? I believe there are a number of cases that state that, and they are in the statutory... Are they in your brief? The Bunce case is in the brief. The Tarek case references that. What case? TERECH, I believe. There are several cases in Missouri. Peters that refer to that type of issue. They say something along the lines of that failure to send periodic statements add nothing to the waiver argument. Okay, in the context of that regulation? In the context of a motion to dismiss. I do not know if it's in the context of... I don't remember if they are referring to 12 CFR 225.6. Do you agree that under the present regulation you can't do that? I believe that the present regulation has been amended and clarified to indicate that after sending periodic... after the one stops sending periodic statements, it is more of a question of whether or not they are allowed to charge interest. We've never litigated that. All right. Can we end here? We've got a rebuttal coming, Judge Merrick. Okay. Thank you. Thank you. To speak real quickly on the contract interpretation issue. You don't get to put an affidavit in the record that says that contract means this. That's absolute no-no in the contract interpretation world. You don't have to find that there was a splitting of one interest and another. The only thing you have to find to interpret this contract is that the parties meant what they said. If I... What was sold was a receivable. They define receivable. They define account. Those two terms are defined as different things. If I sign a contract... It hurts you. I'm sorry? You want receivable to be the same as an account. An account is a certain amount of money, right? That's owed. Receivable could be something broader. What about their affidavit which says, if it says we were buying all the rights? Well, no, the prevent affidavit... You don't get to say that. That's not the way contract interpretation works. If it's... Okay, I got you. If it's ambiguous... Let's say receivable is ambiguous because it's circular. They've got evidence. You chose not to depose the guy. Even if it's ambiguous, under anybody's law, you don't get to do the Monday morning quarterback, well, what that meant was that. You can do industry custom. You can prove things like that. I don't know about that. We cite a case. It's interpreted under New York law. There's a New York law case that says... No parole evidence? Parole evidence is one thing. Somebody, after the fact, saying that contract means this, is off limits. No. Did you get any help from the regulation, even though it came afterward, as evidence of what custom in this particular industry is? It was a later definition of what the custom is? You haven't argued that. I don't believe we've phrased that argument in those terms, Your Honor. I can understand that argument. I mean, in contract interpretation, you might get some help out of that. I can understand that that may be the case, Your Honor. Essentially, as I understand their argument today, they're saying, we were entitled to receive this interest, although not under the theory we pled, and not under the theory... Let's look at that again. Okay. Ambiguity. There was one comment about ambiguity, and I'm going to stop when this turns red, no matter what. I'm going to be the one person today that stops when red happens. I'm telling you. The ambiguity argument is addressed in our brief. There is a reference to an account. It references back to paragraph 5-2, and if you look at paragraph 5-2, it says, buy the account back under paragraph 5-2, something. This is drilled down far more than you're going to go, but if you go back to 5-2, 5-2 talks about the repurchase of receivables. It's not an ambiguity. The exhibits don't create ambiguities. We cite a case on that. You look at the actual language of what was sold, and it wasn't the contract rights. Red light. All right. Thank you, sir. Thank you both for your arguments. Thank you. Case to be submitted. Clerk may adjourn court.